```
                   UNITED STATES DISTRICT COURT

                   SOUTHERN DISTRICT OF TEXAS

                        HOUSTON DIVISION

UNITED STATES OF AMERICA       .
                               .  Criminal Action
VERSUS                         .  No. H-15-CR-263
                               .
ASHER ABID KHAN,               .  Houston, Texas
                               .  November 20, 2019
                               .  2:03 p.m.
              Defendant.       .
. . . . . . . . . . . . . . . . .


                    TRANSCRIPT OF PROCEEDINGS

              BEFORE THE HONORABLE LYNN N. HUGHES

                           HEARING

APPEARANCES:

FOR THE UNITED STATES OF AMERICA:

        Ms. Carolyn Ferko
        Ms. Anna Kalluri
        Assistant United States Attorneys
        UNITED STATES ATTORNEY'S OFFICE
        1000 Louisiana
        Suite 2300
        Houston, Texas  77002
        713.567.9000

FOR THE DEFENDANT:

        Mr. David Adler
        ATTORNEY AT LAW
        6750 West Loop South
        Suite 120
        Bellaire, Texas 77401
        713.666.7576
        Fax:  713.665.7070
        davidadler1@hotmail.com

          PROCEEDINGS RECORDED BY STENOGRAPHIC MEANS,
      TRANSCRIPT PRODUCED FROM COMPUTER-AIDED TRANSCRIPTION




          Gayle Dye, CSR, RDR, CRR - 713.250.5582
```

```
 1  COURT REPORTER:
 2          GAYLE L. DYE, CSR, RDR, CRR
            515 Rusk, Room 8004
 3          Houston, Texas   77002
            713.250.5582
 4
```

|  |  |
|---|---|
| 1 | PROCEEDINGS |
| 2 | November 20, 2019 |
| 3 | THE COURT: A smaller audience than I had this |
| 4 | morning. I had 2,552 or something new citizens. |
| 02:03:05  5 | MS. FERKO: Oh, wow. |
| 6 | THE COURT: That's a crowd. I mean, when I was |
| 7 | singing, of course, it was a much bigger crowd every morning. |
| 8 | All right. What does the Government want to do |
| 9 | this afternoon? |
| 02:03:31 10 | MS. FERKO: Well, your Honor, based upon your order, |
| 11 | we did file a brief on the law affecting the resentencing; and |
| 12 | we put it forth in our sentencing recommendation. I know |
| 13 | Mr. Adler also filed a brief which I would like to compliment |
| 14 | him on. It was a very well written brief. And -- |
| 02:03:48 15 | THE COURT: He is, like me, smarter than he looks. |
| 16 | MS. FERKO: And your Honor, I would say -- I would say |
| 17 | there is an issue to address maybe at the end regarding the |
| 18 | status of supervision of the Defendant beyond the date of the |
| 19 | 26th of November. |
| 02:04:07 20 | According to BOP, that's a release date, quote, |
| 21 | unquote, on your original sentence; but since the appeal |
| 22 | occurred and the judgment is vacated on the -- in September, |
| 23 | there is no judgment. So, there would be no supervised release. |
| 24 | So, the gap -- there's a gap time between -- |
| 02:04:26 25 | THE COURT: So, he reverts to being a pretrial |

Gayle Dye, CSR, RDR, CRR - 713.250.5582

```
 1  releasee.
 2              MS. FERKO:  And I just think we'd want some direction
 3  from the Court on that so pretrial kind of takes over.
 4              THE COURT:  Your house for Christmas?
 5              MS. FERKO:  So, that will be helpful because I'm just
 6  not sure -- I don't think this situation happens often.  And I
 7  wouldn't want either agencies or, you know, something to go
 8  awry.
 9              MR. ADLER:  We have no objection to Mr. Khan
10  continuing to comply with all the pretrial conditions that were
11  imposed before the -- or that were in effect as of the
12  sentencing last time.  We have no problem with that.
13              MS. FERKO:  Right.
14              And I think, your Honor, we'd ask for either --
15  either a detention or either -- the same situation where his
16  pretrial to be reimposed on the 26th or before the 26th even.
17              THE COURT:  Have we gotten past ankle monitors and
18  stuff?
19              MR. ADLER:  He is not on an ankle monitor.
20  Mr. Hopkins from probation told me that, technically, he is
21  still a BOP inmate even though he is here in the courtroom
22  today.  But that will end soon; and then, technically, he would
23  have -- I mean, had the other judgment been in place, he would
24  have started his supervised release.
25              But since there is no judgment, he'll just sort
```

|  |  |
|--|--|
| 1 | of be in the clear.  So, that's why we have no opposition to the |
| 2 | pretrial conditions being reimposed. |
| 3 | THE COURT:  Will you do it? |
| 4 | THE PROBATION OFFICER:  Yes, your Honor.  I'll speak |
| 02:05:50  5 | to the pretrial officer that was supervising him before. |
| 6 | MS. FERKO:  Okay. |
| 7 | THE COURT:  Understand? |
| 8 | THE DEFENDANT:   (Indicated yes.) |
| 9 | THE COURT:  He nodded. |
| 02:06:08 10 | I have a question about the record. |
| 11 | MS. FERKO:  Yes, your Honor. |
| 12 | THE COURT:  It has been said as a deliberate weasely |
| 13 | passive construction that he planned to blow up the Galleria. |
| 14 | Now, my recollection is -- |
| 02:06:28 15 | MS. FERKO:  No, your Honor. |
| 16 | MR. ADLER:  That was a different guy. |
| 17 | THE COURT:  That's a different guy. |
| 18 | THE CASE MANAGER:  Yes. |
| 19 | (Side-bar discussion off the record between the Court and |
| 02:06:40 20 | the case manager.) |
| 21 | MS. FERKO:  Yeah.  The problem is we're the same -- |
| 22 | MR. ADLER:  Yeah. |
| 23 | MS. FERKO:  Right? |
| 24 | This is -- yeah.  No, your Honor.  This is the |
| 02:06:45 25 | one -- this is the case Mr. Khan planned to, basically, from |

```
 1  Australia --
 2              THE COURT:  All he did was --
 3              MS. FERKO:  -- to meet to go, like, with -- into --
 4  basically, go from Turkey into, like, either Syria or Iran.
 5              THE COURT:  Haven't looked at it in awhile.
 6              MS. FERKO:  Yeah.  I understand, your Honor.
 7              THE COURT:  What do you want to achieve this
 8  afternoon?
 9              MR. ADLER:  Well, Judge, I think the only thing I want
10  to make sure we're all clear on -- and I suspect the Government
11  agrees -- is that this Court still has tremendous discretion in
12  what sentence to impose at the resentencing hearing in a couple
13  of weeks.
14              I think the problem with the Fifth Circuit, since
15  I was there and, I guess, incurred their wrath -- I've been
16  calling it certain magic words that have to be pronounced by
17  this Court to make the sentence acceptable to the Fifth Circuit.
18  I put some of that in the briefing.
19              Frankly, I'd be willing to propose some language.
20  I suppose the Government would not approve of the number that's
21  going to accompany my proposal, but they might approve of the
22  language as far as what this Court is to -- possibly to
23  pronounce so that the Fifth Circuit doesn't come after me again.
24              MS. FERKO:  Well, your Honor, I believe the United
25  States and, I think -- and Mr. Adler agree that the terrorism
```

|  |  |
|---|---|
|  | 1  enhancement should be applied.  That calculation should -- he |
|  | 2  should start at a Level 38.  We -- I mean, we're not opposed to |
|  | 3  his -- he pled guilty, acceptance of responsibility, follow |
|  | 4  those calculations. |
| 02:08:23 | 5           The final -- I believe the final calculation ends |
|  | 6  up being beyond the maximum -- statutory maximum of the |
|  | 7  sentence.  So, he's only subject to a maximum of 15 years which |
|  | 8  is 180 months. |
|  | 9           The United States was at the first sentencing and |
| 02:08:41 | 10 still at this sentencing.  We are asking for a maximum sentence |
|  | 11 in this case.  I think we lay out in our briefing, both in -- a |
|  | 12 little bit of the law affecting the resentencing but more so in |
|  | 13 our response to Defendant's objections that were just recently |
|  | 14 filed last week, your Honor, what the United States would want |
| 02:08:59 | 15 and the reasons why that, you know -- the 18-month sentence, |
|  | 16 your Honor, is, essentially, a 10 percent -- or a 90 percent |
|  | 17 deviation downward of the sentence that could be imposed for |
|  | 18 this Defendant.  And we just feel that that's -- it's not |
|  | 19 enough.  It's too insignificant. |
| 02:09:17 | 20          And I understand there's arguments on the other |
|  | 21 side by Mr. Adler for the reasons for that type of sentence. |
|  | 22 But what I think, first, is we just have to get through the |
|  | 23 calculations; and the United States also, your Honor, would tell |
|  | 24 -- would state, basically, because of the resentencing and the |
| 02:09:31 | 25 rule of mandate, there were two points that actually were |

```
                1   included in the PSR that was filed -- on the updated PSR that
                2   the United States and both the defense agree do not apply.
                3                 So, instead of the 30 -- 40 or whatever it would
                4   be, those two points are not in play because the United States
02:09:49        5   did not appeal that portion of the sentencing guideline
                6   calculation.  So, that's a moot point.  We cannot argue that at
                7   this time.
                8                 THE COURT:  Mr. Adler.
                9                 MR. ADLER:  Again, having gone through the Fifth
02:10:05       10   Circuit argument, I felt it was apparent from their questioning
               11   that they felt the terrorism enhancement should apply; and so, I
               12   have not objected to that again.  But that doesn't mean this
               13   Court can't vary or depart back down to the original sentence or
               14   any other sentence the Court deems appropriate.
02:10:21       15                 So, even though I haven't objected to that
               16   enhancement and that issue will not be before the Court, I don't
               17   want the Court to think I'm conceding that I think a 15-year
               18   sentence or maximum punishment is appropriate.
               19                 Mr. Khan completed the sentence of imprisonment
02:10:34       20   that this Court felt was appropriate the first time, and I --
               21                 THE COURT:  I know that.  I'm just trying to make sure
               22   we got all the things that we -- I don't want this resentencing
               23   to go on for four days.
               24                 MS. FERKO:  Right.
02:10:49       25                 THE COURT:  Send you all off to look at more books and
```

1  come back and confuse me more.
2          MR. ADLER:  Yeah.  We -- both sides have filed some
3  law about the resentencing.
4          MS. FERKO:  Yes, your Honor.
5          MR. ADLER:  I did file some additional materials
6  relating to him being back in school and working.  He's
7  participating in a couple of programs to stop young men from
8  joining extremist groups or criminal gangs.
9                  I think he just recently was interviewed for a
10 Podcast that's on the Internet now.  The *Chronicle* wants to talk
11 to him.  He's involved with something with the City of Houston
12 where he was interviewed.  I sat in for that interview, and he
13 explained what he thought caused him to get drawn into this and
14 how parents and teachers and community leaders can spot kids who
15 might be going down the same path.
16                 So, I filed some materials about that just
17 showing that he's continued to try to do what he had been doing
18 while he was on bond.  He still speaks at the University of
19 Houston student union.  When kids come by and talk about
20 geopolitical events, he points out that you should not believe
21 propaganda that's on the Internet from some of these groups.
22         THE COURT:  How old was he when he started this?  I
23 know he was zero when he started.
24         MR. ADLER:  Nineteen?
25         THE DEFENDANT:  Yes.

Gayle Dye, CSR, RDR, CRR - 713.250.5582

```
 1              MR. ADLER:  He was 19 years old.
 2              THE COURT:  It's a very peculiar process.
 3              MR. ADLER:  I'm sorry, Judge, I couldn't hear you.
 4              THE COURT:  This particular set of rules and statutes
 5   and things is a very peculiar process.  Did I read it correctly
 6   that somebody with no criminal history gets an automatic
 7   criminal history if they fall under the --
 8              MS. FERKO:  The terrorism enhancement, your Honor.
 9   Yes, it is; and that's part of the application.
10              THE COURT:  Can you -- we're not going to reiterate.
11   Just explain to me how a criminal history changes based on a
12   crime.  It doesn't matter what it -- unless it's a bank robbery
13   on a Tuesday.  They may give you --
14              MS. FERKO:  So, your Honor, it's been adopted by the
15   United States Sentencing Guidelines as far as the application of
16   a Category VI once that's found that there's evidence that the
17   Defendant's, in this case Khan's, conduct was calculated to
18   influence or affect the conduct of the United States because
19   ISIS terrorist acts were intended to intimidate or coerce the
20   US.
21              Then once that Level Thirty -- or -- what -- the
22   application of the 12 points is applied, the sentencing
23   guidelines, Congress, as far as that's concerned, wrote in that
24   if you're in this section, then your criminal history, no matter
25   what it is, whether it's a II -- a I, a II, a III, a IV, or a V,
```

```
               1   you will become a VI.
               2           THE COURT:  Tell me --
               3           MS. FERKO:  Sure.
               4           THE COURT:  -- how a crime on Wednesday changes your
02:16:07       5   criminal history on Monday --
               6           MS. FERKO:  Well, your Honor --
               7           THE COURT:  -- the preceding Monday.
               8           MS. FERKO:  You know, I mean, this is -- the charge of
               9   which Mr. --
02:16:16      10           THE COURT:  Wait, wait, wait.
              11           MS. FERKO:  Yes.
              12           THE COURT:  It doesn't matter what the charge is.
              13           MS. FERKO:  Well, it does.  It does -- it has to be --
              14           THE COURT:  No.  But they could -- by the Government's
02:16:27      15   logic, Congress and the Sentencing Commission could say anybody
              16   who hunts geese on Wednesday gets a criminal history of IV.
              17               Now, that destroys the phrase "criminal history"
              18   of any rational meaning, which is not an unusual practice in
              19   government.
02:16:54      20           MS. FERKO:  Well, your Honor, I mean, I think -- I
              21   mean, the basis --
              22           THE COURT:  And this is academic because --
              23           MS. FERKO:  Right.  I think the basis or the back-end
              24   intent of the guidelines initially was to provide some
02:17:05      25   uniformity, conformity; and so, that's why all these numbers and
```

1  adding it to these levels and categories --
2           THE COURT:  It has nothing to do with calling him
3  something -- in fact, my friend Lincoln there --
4           MS. FERKO:  Yes, your Honor.  I'm familiar with him.
5           THE COURT:  You've met him?
6           MS. FERKO:  We've never met.
7           THE COURT:  I went to school with him.  Mr. Lincoln
8  would respond to arguments like that as if -- if you call a
9  goat's tail a leg, how many legs does the goat have?  And the
10 answer is four.  Calling something a leg when it's a tail is not
11 rational, and rationality would be something in sentencing that
12 the Constitution would think about.
13          MS. FERKO:  Well, your Honor, I mean, as far as the
14 criminal history points and how they add up -- and I'd actually
15 defer to Mr. Hopkins to what the -- the maximum amount of points
16 a person can have; but I think that that fight would
17 automatically -- by automatically them sticking them into
18 Category VI, they weren't worried about if you're a victim of a
19 hate crime, add two points to your criminal history or if you --
20 if you did "X," "Y," and "Z," add seven points to the criminal
21 history category.
22              They just said, no, this is a crime that we find
23 horrible -- abominable and you're going to be a Category VI,
24 like, we're going to push you --
25          THE COURT:  It's still not history.

1          MS. FERKO:  I'm sorry, your Honor?

2          THE COURT:  It's still not criminal history.  Criminal
3  history applies to non-offense conduct but other offenses the
4  Defendant may have committed.  So, you --

5          MS. FERKO:  Wait.  But I think that they weren't
6  worried if they were a zero, if they were a -- you know, or if
7  the criminal points history added up to a Category III or
8  Category IV.  I just felt that -- my understanding, your Honor,
9  is, from the application and the thought processes behind this,
10 they wanted to put that individual who committed that crime of
11 terrorism -- or pled guilty to that crime of terrorism in a
12 Category VI automatically.

13         MR. ADLER:  Judge, if I could, I think I fully
14 understand what the Court is saying, that the nature of the
15 current offense doesn't change what happened historically.

16         THE COURT:  Right.

17         MR. ADLER:  What -- and frankly, I think if the
18 guidelines were drafted properly, they would have said something
19 about the offense level being changed versus the criminal
20 history category because we can't change what's happened
21 historically.  That's just simple logic.

22         And that's why I pointed out earlier this
23 afternoon that, if the Court applies the terrorism enhancement
24 but then finds that that is not a rational or appropriate
25 sentence for just about any reason, as long as the Court puts it

1  on the record, then the Court can say, "I'm going to sentence
2  him back in Category I."
3         So, it's -- I agree it's a little bit of a -- it
4  seems an odd dance that we have to do to get through this; but I
5  am concerned about going back to the Fifth Circuit; and the
6  Fifth Circuit saying we're going to move the case to another
7  Court or something.
8         THE COURT:  There's only one who wants to do that.
9         Yes, sir.
10        THE PROBATION OFFICER:  Your Honor, I was just going
11 to say the other place in the guidelines this occurs is in the
12 case of career offenders and armed-career criminals where they
13 automatically give a Category VI.
14        And my understanding is that it's to determine --
15 or to account for the likelihood of recidivism, not actually
16 their past conduct and their --
17        THE COURT:  Don't call it past conduct when it didn't
18 exist.
19        MS. FERKO:  Well, I think the term is -- I mean, at
20 least in the newer guidelines, the current book, I mean, it
21 refers to it as criminal history and criminal livelihood.  I
22 mean -- so, I don't know "livelihood" means that it's in the
23 future but I mean --
24        MR. ADLER:  Livelihood is --
25        MS. FERKO:  Right.

Gayle Dye, CSR, RDR, CRR - 713.250.5582

|  |  |
|---|---|
|  | 1    MR. ADLER: -- if you've made your livelihood -- if |
|  | 2 you've made your livelihood as a prosecutor -- |
|  | 3    MS. FERKO: Right. |
|  | 4    MR. ADLER: -- that's historical because -- |
| 02:21:03 | 5    THE COURT: And that's 20 points. |
|  | 6    MS. FERKO: But your Honor, I mean, as far as what -- |
|  | 7 as far as that enhancement is concerned, it is -- |
|  | 8    THE COURT: Ms. Ferko -- |
|  | 9    MS. FERKO: Yes. |
| 02:21:13 | 10    THE COURT: -- you've done a very good job of trying |
|  | 11 to explain something that we simply have to accept -- |
|  | 12    MS. FERKO: Thank you, your Honor. |
|  | 13    THE COURT: -- at this stage. So, I don't want to |
|  | 14 wear you out on that. |
| 02:21:29 | 15    MS. FERKO: Thanks. |
|  | 16    THE COURT: The answer is it just is. They call stuff |
|  | 17 interstate commerce which is -- no founder would have considered |
|  | 18 interstate commerce. And forfeiture because some component of |
|  | 19 the computer used was made a problem. Isn't that a confession |
| 02:21:57 | 20 of silliness or accurateness or something? Yes, the related |
|  | 21 stuff is bad; but we have 50 other substantial alternative |
|  | 22 jurisdictions. |
|  | 23         Do you anticipate any further reading materials? |
|  | 24    MS. FERKO: At this time, no, your Honor. I feel the |
| 02:22:24 | 25 United States has provided this Court with a substantial |

```
 1  briefing on the law that relates to the sentencing.
 2              I believe -- as of last week our reply to
 3  Mr. Adler's objections to the PSR I feel answers a lot of
 4  things.  We actually, you know, conceded the two points under
 5  the mandate rule.  So, I feel that, you know, we would be ready
 6  to proceed to sentencing on the 13th; and I think the PSR that's
 7  been updated is well written and includes, you know --
 8              THE COURT:  So, when are you going to New York?
 9              MR. ADLER:  I believe Tuesday morning, and I come back
10  Saturday.
11              THE COURT:  Okay.
12                  You saw that?
13              MS. FERKO:  Your Honor, I was -- I actually called
14  Mr. Adler -- I'm actually out of the country that date of the
15  initial, so --
16              THE COURT:  That's when we'll set it.
17              MS. FERKO:  So, I was hoping Mr. Adler was somewhere
18  on Friday other than Texas.
19              THE COURT:  Okay.  I misremembered what the
20  application said; and so, I granted it but then remonstrated
21  that, no, we moved it to February.  I just --
22              MS. FERKO:  No.  I think --
23              THE CASE MANAGER:  It's December 13th.
24              MS. FERKO:  December 13th.
25              THE COURT:  Everybody's agreed.  That's why we have
```

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1  court reporters and wonderful case managers and people to say
2  no.  Somehow I had this -- you know, I sign a lot of stuff.
3          MS. FERKO:  Yes, sir.
4          THE COURT:  Motions for continuance are the most
5  frequently signed document in my career.  And I just --
6          MR. ADLER:  On this side of the courtroom, that's
7  considered a big victory if you get a motion for continuance
8  granted.  Sometimes that's our only victory.
9          THE COURT:  Well, sometimes they deserve a continuance
10 when they might not deserve to win.
11             All right.  Anything else we can do?
12         MR. ADLER:  No.  We'll be here on the 13th, Judge.
13         THE COURT:  I think I'll be ready.
14         MS. FERKO:  Okay.  Thank you, your Honor.
15         THE COURT:  I've read what you've done so far, and I
16 just wanted to think about it.
17         MR. ADLER:  Thank you, Judge.
18         MS. FERKO:  Thank you, your Honor.
19         THE COURT:  All right.  Thank you, counsel.
20     (Proceedings concluded at 2:24 p.m.)

C E R T I F I C A T E

   I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter, to the best of my ability.

By: /s/Gayle L. Dye                 12/23/2019
      Gayle L. Dye, CSR, RDR, CRR      Date

Gayle Dye, CSR, RDR, CRR - 713.250.5582